UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

---

NETJETS ASSOCIATION OF )
SHARED AIRCRAFT PILOTS, )
        Plaintiff, )
        ) Civil Action No. _____
   v. )
        ) (Jury Trial Demanded)
NETJETS AVIATION, INC., and )
NETJETS, INC., )
        Defendants. )

---

**PLAINTIFF'S VERIFIED COMPLAINT FOR VIOLATIONS OF THE RAILWAY LABOR ACT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES**

Plaintiff, NetJets Association of Shared Aircraft Pilots ("NJASAP" or "Union"), for its complaint against Defendant NetJets Aviation, Inc., and NetJets, Inc., (collectively "Defendants") hereby states:

**JURISDICTION AND VENUE**

1. This is an action for legal and equitable relief under the Railway Labor Act, 45 U.S.C. § 151, *et seq.*, (hereinafter "the RLA" or "the Act"). This Court has subject matter jurisdiction as follows: (a) under 28 U.S.C. § 1331 because the case arises under the laws of the United States, namely, the RLA; (b) under 28 U.S.C. § 1337 because the matter in controversy arises under an Act of Congress regulating commerce, namely, the RLA; and (c) §§ 2201 and 2202 because this is an actual controversy in which the Plaintiff seeks declaratory judgment.

2. The injunctive relief sought by this action is necessary to stop the Defendants' unlawful discrimination and intimidation against pilots, who are fractional aircraft captains and

first officers, and who are exercising their rights to support their union representative's efforts in collective bargaining by directing customers to a Union website when they inquire about an ongoing labor dispute. Defendants are retaliating against these pilots by threatening them with discipline and/or discharge in violation of Sections 2, Third and Fourth of the RLA, 45 U.S.C. § 152, Third and Fourth, which grant employees of air carriers the "right to organize and bargain collectively through representatives of their own choosing" which "shall be designated by the respective parties without interference, influence, or coercion."

3. Venue under 28 U.S.C. § 1391(b)(2) and (3) is proper, and personal jurisdiction over Defendants exists in this District wherein Defendants are located, where a substantial part of the events or omissions giving rise to the claims occurred, where labor relations policy is promulgated, where Defendants, the Union, and several witnesses are found, and where Defendants regularly conduct business operations and have substantial contacts.

## THE PARTIES

4. NJASAP is a labor organization and is the exclusive bargaining "representative," as defined by Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth, of the approximately 3,000 pilots employed by Defendant NetJets Aviation, Inc. The National Mediation Board certified NJASAP as the exclusive collective bargaining representative of the craft or class of pilots of Defendant NetJets Aviation, Inc. on August 26, 2008, in NJASAP, 35 N.M.B. 245 (2008). NJASAP is headquartered at 2740 Airport Drive, Suite 330, Columbus, Ohio 43219. This action is brought by NJASAP on its own behalf and for and in the interests of all NJASAP-represented pilots in the service of Defendant NetJets Aviation, Inc.

5. Defendant NetJets Aviation, Inc. is a private jet charter company that offers fractional ownership of its fleet of jet aircraft to customers, or "aircraft owners," who fly with

NetJets pilots and crew manning the aircraft. Defendant NetJets Aviation, Inc. is a "carrier" within the meaning of the Railway Labor Act, 45 U.S.C. § 151, et seq.

6. Defendant NetJets Aviation, Inc. is a corporate subsidiary of Defendant NetJets, Inc. Defendant NetJets Aviation, Inc. is headquartered at 4111 Bridgeway Ave., Columbus, Ohio 43219-1882.

7. Defendant NetJets, Inc. is a wholly owned subsidiary of Berkshire Hathaway, Inc. NetJets, Inc. is headquartered at 4111 Bridgeway Ave., Columbus, Ohio 43219-1882. Defendant NetJets, Inc. fully owns NetJets Aviation, Inc., and there is a significant interrelation of operations between the two companies. Further, there is a significant overlap in management between the two companies. This overlap also includes centralized control of labor relations for both companies. Furthermore, there is common financial control of both Defendants. Defendants operate as a single integrated enterprise under the RLA.

## ALLEGATIONS OF FACT

8. NJASAP and Defendants are parties to a collective bargaining agreement ("2020 Amended Agreement" or "Agreement") and are currently engaged in midterm bargaining over wages, benefits, and working conditions.

9. As part of its communications to its/the membership and the public about the labor dispute, the status of labor contract negotiations and the Union's goals in bargaining, NJASAP creates and maintains a website, GenuineQs.com. The website serves as a resource for pilots, aircraft owners, and the public to obtain information about NJASAP's positions, and is patently intended to win public support in the labor dispute, bring attention to subjects of bargaining and related issues, such as recruitment and retention, which are directly affected by their terms and

conditions of employment. A copy of the current GenuineQs.com website as of April 21, 2023 is attached as Exhibit A.

10. The GenuineQs.com website is not new, and NJASAP has utilized it as a resource to communicate with pilots, NetJets aircraft owners, and the public about contract negotiations since at least 2014. The substance of the GenuineQs.com website has not substantially changed from then to the present.

11. NJASAP also communicated to pilots through various methods during 2014 and 2015 that they should refer aircraft owners to the website when asked about bargaining. A copy of the 2014 and 2015 communications is attached as Exhibit B.

12. Defendants have never previously attempted to use the Crewmember Policy Manual ("CPM") or any other Company policy to suppress protected speech concerning labor disputes. They have never contested pilots referring aircraft owners to the Union's GenuineQs.com website, or any other Union-sponsored website. Defendants' attempt to enforce these policies against pilots who answer customer questions about the labor dispute by referring them to the website is discriminatory and/or undertaken with anti-union animus and/or designed to weaken the Union at the bargaining table.

13. The parties began midterm bargaining in February 2023 over wages, benefits, and terms and conditions of employment. NJASAP utilizes the GenuineQs.com website during the parties' 2023 midterm bargaining and sent various communications to the pilot membership and the public notifying them of the site.

14. Defendants have not, to date, systematically prohibited speech or discussion with aircraft owners over these subjects, as they have with the GenuineQs.com website referrals, and they have limited their enforcement of Section 3 of the CPM to union speech.

15. In several NJASAP's communications in early 2023, the Union stated, just as it did in 2014 and 2015, that if aircraft owners had inquired about bargaining, pilots should refer them to the GenuineQs.com website for more information. A copy of those communications is attached as Exhibit C.

16. On or about March 8, 2023, pilots received an email from NetJets Chief Operating Officer Alan Bobo referencing a Union-sponsored website. The website referenced appears to be the GenuineQs.com website. A copy of that email is attached as Exhibit D. The email advised that it is against Company policy and Section 3 of the Crew Policy Manual – Professional Image and Communications - to share the website with owners. The email states:

> "Crewmembers,
>
> It has been brought to our attention that some Pilots may be referring Owners to a union-sponsored website.
>
> Please be advised that this is against Company policy and violates Section 3 of the Crew Policy Manual – Professional Image and Communications.
>
> We appreciate your continued professionalism and focus on Safety and Service.
>
> Alan Bobo, COO" (Exhibit D)

17. A copy of the relevant portion of Chapter 3 of the Crew Policy Manual is attached as Exhibit E. Chapter 3 of the Crew Policy Manual (hereinafter "CPM") states:

> "Crewmembers must exhibit the highest level of courtesy, professionalism, and respect in all communications with Owners, their family members and guests, customers, NetJets employees, vendors, and the general public.
>
> Interactions (e.g. face-to-face/phone conversations, emails) must be positive, professional, and customer focused. To avoid misunderstandings and miscommunication, practice discretion in all

communications, do not engage in the following, including but not limited to:

- Discuss personal issues or controversial topics
- Make negative comments about NetJets, its employees, other airline/competitors or their aircraft, or company vendors
- Use imprecise or casual language (e.g. hard landing, severe turbulence
- Discuss publicly any matter that could be misinterpreted or cast doubt on the safety of flight operations, including the following:
    - Weather conditions
    - Airworthiness of company aircraft
    - Airport conditions
    - Qualifications of others (e.g. individual, agency, vendor)
    - Aircraft performance
    - Flight-related issues or concerns" (Exhibit E)

18. By stating that pilots referring aircraft owners to the Union-sponsored website was a violation of Company policy, Defendants necessarily implied that this conduct would subject those pilots to discipline, up to and including termination.

19. Following review of the March 8, 2023, email from Mr. Bobo, NJASAP sought clarification from Defendants regarding how pilots should respond to owner inquiries to avoid the threat of discipline or discharge. Defendants refused to respond to NJASAP's requests for clarification. A copy of these communications is attached as Exhibit F.

20. By and through the actions described above, the Company is attempting to threaten, coerce, discipline, or silence pilots in the exercise of their rights under the RLA, including their right to support their Union representative's efforts in collective bargaining and to direct owners to the website when they ask for information about a labor dispute. Moreover, Defendants' unilateral action in establishing this new application of the CPM is undertaken to undermine the Union's ability to effectively engage in collective bargaining on behalf of the craft or class of

pilots, as publicity and appeals to the public for support are critical to the process and certainly lawful.

21. Since the parties are engaged in midterm bargaining and the Union therefore lacks the right to strike, its appeals to aircraft owners and the public for support are critical to bargaining for better wages and benefits. Defendants' attempt to suppress speech thus strikes a fundamental blow to the Union's ability to bargain collectively, and to the Union itself.

22. Additionally, Plaintiff, while in midterm bargaining, held an informational picketing rally attended by pilots on April 19, 2023. The event was well-attended and took place outside of NetJets headquarters in Columbus, Ohio. During the picket, Plaintiff received multiple reports that Mr. Bobo stopped his car near the picket line and took photographs of NJASAP members engaged in informational picketing. A NetJets corporate officer photographing picketers and conducting surveillance of protected union activity corroborates that Defendants' conduct is motivated by anti-union animus.

23. Further, Defendants, through NetJets President of Sales, Marketing and Service Pat Gallagher, sent a message on April 19, 2023, to Defendants' employees in response to the picketing. A copy of the communication is attached as Exhibit G. The email states:



24. The anti-union message sent by Mr. Gallagher states that Plaintiff's leadership continues to "run its union playbook" and that certain actions by unions "must be dog-eared in the unions' playbooks" and makes assertions the Plaintiff's leadership is out of touch with its membership. Employer attempts to interfere with or undermine the elected leadership of a labor organization in the eyes of union members is a hallmark of hostility towards the rights of

employees to form, join and assist unions and represents a flagrant violation of our nation's federal labor laws. Indeed, Mr. Gallagher's attack on unions is not limited to Plaintiff, but also extends to unions at other "airlines." In furtherance of Defendants' unlawful conduct, and in reckless disregard for the chilling effect his comments may have on NetJets pilots who need to raise legitimate safety concerns, he falsely claims that "safety always seems to come into question when negotiations heat up" thereby attempting to portray airline unions as insincere when the advocate for the safety of passengers and flight crews.

25. NetJets' conduct, as evidenced by its activities described in this Complaint, is discriminatory and/or motivated by anti-union animus, and is interfering with, influencing, and coercing for the purpose of weakening the union as an institution, undermining its ability to engage in collective bargaining on behalf of the pilots it is certified to represent under the Railway Labor Act, and ultimately destroying it.

26. By and through the actions described above, pilots have been dissuaded from engaging in protected activity under the RLA, for fear of being disciplined and/or terminated from their jobs. The Union and the pilots it represents are being deliberately and systematically injured and undermined by the unlawful actions of Defendants. Said actions are designed to undermine the Union's ability to engage in collective bargaining, destroy support for the Union, weaken NJASAP and ultimately destroy it. Said damage cannot be remedied by law.

### **Necessity of Injunctive Relief**

27. Plaintiff is likely to succeed on the merits of their actions because its allegations are well-pled and supportable.

28. There is no need to show irreparable harm for an injunction arising from a violation of the Act.

29. Alternately, Plaintiff will suffer irreparable harm without an injunction because the collective and individual rights of pilots are threatened with permanent harm.

30. There is no adequate remedy at law because Plaintiff's injuries cannot be remedied with a damages award.

31. The harm that the Plaintiff will suffer without the injunction is greater than the harm that preliminary relief would inflict on the Defendants because the relief sought merely requires Defendants to refrain from violating federal labor law.

32. An injunction is in the public interest because the public has a strong interest in vindicating the RLA's public policy permitting employees to organize free from interference, influence, or coercion by carriers; hence, the interests of the public are aligned with Plaintiff herein.

33. No prior application has been made to this or any other court for the relief requested herein.

34. Plaintiff has made every reasonable effort to resolve this dispute to no avail.

35. There are no public officers charged with the duty to protect NJASAP or its members who are able to provide adequate protection.

## CAUSES OF ACTION

### COUNT ONE

(Violation of Section 2, Third of the Act, 45 U.S.C. § 152, Third)

36. The allegations of paragraphs 1 through 35 of the Complaint are incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c).

37. Section 2, Third of the RLA, 45 U.S.C. §152, Third, provides:

> Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other;

> and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives ....

38. By issuing its March 8, 2023, email communication to pilots and threatening pilots with discipline and discharge for referring customers to a Union website discussing an ongoing labor dispute, Defendants interfered with, influenced and/or coerced its pilots in their engagement in protected activity under the RLA, including their right to support their Union representative's efforts in collective bargaining by directing owners to the website when they inquire about a labor dispute. Defendants further interfered with, influenced and/or coerced the Union and the pilots it represents in the exercise of their rights to freely participate in protected activity under the RLA.

39. The actions of Defendants referenced herein were discriminatory and/or motivated by anti-union animus and taken for the purpose of impairing the ability of the Union and pilots to function and freely associate, to destroy support for the Union, weaken NJASAP and ultimately destroy it.

40. By engaging in said actions, Defendants violated Section 2, Third of the RLA, 45 U.S.C. § 152, Third.

## COUNT TWO

(Violation of Section 2, Fourth of the Act, 45 U.S.C. § 152, Fourth)

41. The allegations of paragraphs 1 through 40 of the Complaint are herein incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

42. Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, provides:

> Employees shall have the right to organize and bargain collectively through representatives of their own choosing. ... No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier ... to influence or coerce employees in an

> effort to induce them ... not to join or remain members of any labor organization.

43. By issuing its March 8, 2023, email communication to pilots and threatening pilots with discipline and discharge for referring customers to a Union website discussing an ongoing labor dispute, Defendants interfered with the right of employees to organize and bargain collectively, interfered with the organization of its employees, and interfered with the right of the pilots to freely participate in protected activity under the RLA.

44. The actions of Defendants referenced herein were discriminatory and/or motivated by anti-union animus and taken for the purpose impairing the ability of the Union and pilots to function andfreely associate, to destroy support for the Union, to weaken NJASAP and ultimately destroy it.

45. By engaging in said actions, Defendants violated Section 2, Fourth of the RLA,45 U.S.C. § 152, Fourth.

## **RELIEF REQUESTED**

WHEREFORE, the Plaintiff respectfully requests that the Court grant the following relief:

(A) An Order requiring Defendants to restore the status quo, rescind, and retract its March 8, 2023, message and any other direct and/or indirect threats of discipline or discharge related to responding to aircraft owner and other members of the public queries about the labor dispute by referring them to the subject website, and otherwise refrain from prohibiting activities protected by the RLA;

(B) A Preliminary and Permanent Injunction, following a hearing over the matter, prohibiting Defendants from interfering with the rights of its pilot employees in the craft or class, and specifically further prohibiting

Defendants from:

1. Intimidating, coercing, or retaliating against its pilots for exercising their individual or collective rights under the RLA;

2. Maintaining an unlawful ban on or disciplining pilots for their lawful publication of a labor dispute and appeals to aircraft owners and other members of the public for support;

3. Discriminating against pilots on account of their activity or support for the Union;

4. Threatening pilots with adverse action including, without limitation, discipline, and discharge for their Union activity or support;

5. Otherwise violating the rights of its pilots under the RLA.

(C) That Defendants be ordered to conspicuously post copies of this Court's Order at Defendants' headquarters, fixed base operator locations used by Defendants, crew room locations and flight operations facilities for a period of one-hundred eighty (180) days;

(D) That Defendants be ordered to provide a copy of this Court's Order to every pilot who has been covered under the 2020 Amended Agreement, by certified mail at their most current address of record, to ameliorate the effects of Defendants' unlawful conduct with respect to the pilots' rights under the RLA;

(E) Damages in an amount to be determined at trial in the form of the Union's and pilots' actual economic and non-economic damages;

    (F)    An award of the Plaintiff's attorneys' fees and costs incurred in bringing this action; and

    (G)    Any other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: April 24, 2023

    Respectfully submitted,

*s/James Petroff*
James Petroff, Esq. (Lead Counsel)
Rupa Baskaran, Esq. (Pro Hac Vice Pending)
**WENTZ, MCINERNEY, PEIFER & PETROFF LLC**
14 E. Gay Street, Floor 4
Columbus, Ohio 43215
Phone: (614) 756-5566
jpetroff@lawforlabor.com
rbaskaran@lawforlabor.com

*Counsel for Plaintiff*

## VERIFICATION

Based on my own personal knowledge, I hereby declare as follows:

1. I have reviewed this Complaint.

2. The general allegations and the facts specific to me in paragraphs 8-26 are within my personal knowledge and are factually accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24, 2023.


Dated: April 24, 2023.

*Mpascalar*
_____
Michael Pascalar

## **VERIFICATION**

Based on my own personal knowledge, I hereby declare as follows:

1. I have reviewed this Complaint.

2. The general allegations and the facts specific to me in paragraphs 8-26 are within my personal knowledge and are factually accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 24, 2023.

Dated: April 24, 2023.

_____
Pedro Leroux